How much time would you like to reserve? I'd like to reserve two minutes, Your Honor. Two minutes, okay. Good morning. My name is Philip Hornick, and I represent Petitioners in the related cases 06-03432 and 05-77168. Will you help me with the pronunciation? I believe it's Nadtochaev, Your Honor. Nadtochaev? I believe so, yes. Okay. Petitioners appeal, the Board of Immigration appeals denial of their claims for asylum and their motion to reopen their removal hearing. They seek reopening to pursue their claims for asylum-related relief. Their motion to the Board was based on their claim that they received ineffective assistance from their former counsel in their removal hearing. This is the same lawyers in the prior case, isn't it? That is correct. Yes, Your Honor. And they base that claim on the fact that their former counsel did not present readily available corroborative evidence of the harm that other Messianic Christians in Israel have experienced. Some of this evidence was clearly known to Ms. Zipper and their former counsel because she already represented Ms. Nadtochaev's sister, Marina Zafer, and her family, who are also Messianic Christians and are seeking asylum on that ground. Don't we have the kind of the same issues that we had in the previous case? Counsel indicates in her letter to the BIA that she provided all this information. Some of it was from different people. Some of it was from your client relating what had happened to other people within the family. But what evidence can you point to that what you characterize as ineffective assistance of counsel would have made a difference had it been presented to the IJ duplicative, if you will, that somebody else said the same thing that she'd already introduced in direct testimony? Well, Your Honor, one thing that I hope the Court focuses on is that a claim for asylum does not require proof of persecution. Certainly, persecution, if proved, is very significant and shifts the burden of proof to the government why the claim should not be proved. Help me with that. You're saying that in order to obtain asylum, you don't have to show that you were persecuted? That is correct. You have to establish you have a well-founded fear of persecution if returned to the court. Well, that's into the future, but you also have to show past persecution. Well, I would question whether you have to show it. If you can, that's that becomes very persuasive, but the statute does not require Well, if you show past persecution, it makes, at the very least, it makes the requirement to show future persecution just much easier, right? Yes, it does, Your Honor. And I believe it shifts the burden. But it's not a per se requirement, you know, a showing you have to make in order to qualify for asylum. In other words, your case can be based entirely upon the threat of future persecution. That is correct. Is that your position, that you're not alleging past persecution? You're just saying that there's a fear of future persecution? That is correct. We are not alleging that the incidents rose to the level of persecution, but were a well-founded fear. But if you don't show past persecution, then you do have a heavier burden to show a well-founded fear, don't you? Well, I don't – yes, I would agree with that. And I think that's particularly why corroborative evidence of what happens to other individuals similarly situated can be very important. And I also think that that's why having an expert who is well-versed in the overall country conditions. Let's talk about the expert. You've probably heard the question that I asked to the counsel for the government. His position is that there is no, certainly no constitutional obligation of the government to provide money for expert witnesses. There's not even an obligation to provide counsel. Let's take the situation, at least as I understand it, for your client. Your client either did not have resources or was unwilling to pay resources to hire an expert. Is that correct? Well, I'm not aware of that from the record. I thought that the attorney's letter indicated that she was, indeed, out of pocket for what the work had already been done and that it was clear that that was the case. Well, I would agree with that, that there were some financial issues. But whether that – I don't think that that was – I don't think the record shows that that's why expert counsel – a witness was not present. What does the record show as to why expert counsel was not present? Well, at AR 272, Ms. Ziffern states, and I'm going to quote, that an expert witness was absolutely positively not required out of Ms. Ziffern's belief that uncorroborated testimony is sufficient to present a successful asylum claim. So that was her strategic decision as counsel, that she felt that it wasn't necessary. So why – why was she wrong? What would the expert have shown that the country report did not provide? The country report recited some incidents of harassment and harm to Messianic Christians. Professor Manderville, in a declaration that was submitted as part of our motion, spoke to a more extensive pattern of these incidents. And again, when the claim is not based on past persecution, it is important to view events in their totality and the – Okay. So let's say that there's – did your expert indicate what was likely to happen? Were your client to return to Israel? Was that the gravamen of what he was going to say? Well, my recollection is that he simply spoke of what other incidents had already occurred and did not weigh in on, you know, speculating this will happen or this might happen to them. So his testimony, had it been given, would not necessarily have buttressed her own subjective and objective fears of future persecution, would it? Well, we don't know that. But what we do know is that in my client's case, the court was basically presented with just a rather isolated set of circumstances. I understand. But don't – doesn't your client bear the burden to show in a case where you're claiming that there was ineffective assistance of counsel, that had the counsel done a proper job, that it would have changed the course of the proceedings based upon evidence that you put forward to show that? Well, I don't think that our standard is that high. I note that in Iturribarilla, the court refers to showing that counsel's performance was, quote, so inadequate that it may have affected the outcome of the proceedings. And – Okay. Well, but it's not that nebulous. I mean, here you have an experienced lawyer who made a decision, a strategic decision. I respect the fact that you say you disagree with it, and I know your previous counsel also disagreed with it. But that's a strategic decision. What evidence would the expert have presented that would meet the standard of proof necessary for your client to show that there was – there is a well-founded objective fear of future persecution? Other incidents of harm would, I believe, have helped us meet our burden. And I would also add, I don't view Ms. Zipporan as making what are strategic decisions. I would agree, mere strategy, we should not second-guess. But I think her omissions go beyond strategic. Okay. Your two minutes is up, so why don't you think about how you want to respond, and we'll again hear from the government. May it please the Court, it appears that now it is clear from their brief and from the argument that this case is about ineffective assistance of counsel, that the – what the Petitioners endured in the past did not constitute persecution. So let's focus specifically on the expert testimony. We are not in a world of theory here. We have what the expert would have testified to. He cited two areas, again, referring to private ultra-Orthodox Jewish groups harassing Messianic Christians. One, a 2005 Christmas demonstration in which a pastor was assaulted. And two, a group that demonstrates in front of Messianic Christians, and I believe there was a – the expert said at one point there was a bookstore that had been burned. Well, importantly, from that, the expert concludes that the Messianic Christians are persecuted in Israel. Importantly, this information is, again, cumulative evidence of the same type of harassment. Luckily, Petitioner has actually provided us accounts of where this is based on, where these facts from the Petitioner are based on. And consistently, through the nine articles that Petitioner has provided to the court, there have been multiple occurrences, including the 2005 Christmas demonstration, which apparently got out of hand. The police came, actually needed some more police to separate the parties. The assault that was described included the pastor being pushed into a baptismal pool. The police responded to that and prevented further violence. The issue of other demonstrations, there's evidence in the record that Petitioner provided from christianpersecution.com, which talked about a group that the police had prohibited a large protest but permitted a smaller protest further away from certain Messianic Christians. Again, when we actually get into the details of what's going on in Israel, we do not find State-permitted or condoned harm. Now, that – the idea that the government either is involved or condones or permits these kinds of things is clearly an element for them to show past persecution. What role does it play with respect to a well-founded fear of future persecution? Do they have to show as well that the government has been involved in these things, was condoning these kinds of activities? The past is prologue to the – I think Judge Tsimas is as actual – is directly on point here that Petitioners can show a well-founded fear of future persecution. The tactical decision that Petitioner disagrees with is this idea from her former counsel that let's talk about what happened to you. You can testify to it and say that this happened in this locality and it constituted persecution. What Petitioner is now arguing is that I would like to show that there's a pattern or practice of persecution throughout all of Israel. This is a much more difficult case to demonstrate. And so therefore, they want to bring forward evidence that this persecution is condoned in Israel, and they can show that by its response in the past and how that would predict into the future. However, they can't bring forth that evidence, because we do have these ultra-Orthodox groups that harass Christians wholly uncondoned. This is – in our view, would be despicable. However, when it rises to the level that could be violent, the police step in. And that's what these articles demonstrate. They could – the expert relied on this type of harassment and then jumped to the conclusion of persecution. And it may well be that – especially these websites that are documenting the would be what they would constitute persecution. It's not what the law would require. Again, we have these groups demonstrating it's distasteful, it's bigotry. However, when it comes to the government of Israel, it appears that they are conducting investigations. In fact, one of the articles references arresting someone who had assaulted a Messianic Christian and sentencing them to jail. So the – Kennedy. Is there any evidence in what the expert witness would have said, based upon the record, that would tie the government of Israel into these types of violent protests, either condoning it or being directly involved? There's nothing in there that would condone it or be directly involved. What he opines is that these ultra-Orthodox Jewish groups have political power in a way, that they have political influence, and that politicians are loathe to disagree with them. Now, what these ultra-Orthodox groups are doing is protesting and harassing. There is no support in the record that the Israeli government would support harming these individuals or persecuting these individuals. And that is a fine line. And what the expert has said is he believes that these groups support the current government and no government would go against them. Well, that is not – that may be true when it comes to demonstrations. It may be true when it comes to prejudice. But there's no evidence that the government would condone criminal actions. In fact, the police do not condone those criminal actions. There's a law in Israel, as one of these articles points out, against this type of harassment that could be implemented. But it is clear that there are political and religious conflicts in Israel with how to deal with individuals that came to Israel under the law of return when they are, in And that is something that Israel is dealing with. And those conflicts do manifest themselves in this type of harassment. But it is important to look at the actual testimony, the actual facts that Petitioner says a competent attorney would have provided. And notably, absent from their brief, is a substantive discussion of these things. And I think that's why it's important to point out what he would have said. It differed in no way from the types of harassment and prejudicial actions that Petitioner described. And remember, this evidence would have to overcome the fact that her family continues to live in Israel and the fact that she came to the United States on two previous occasions in return. Three of her four children came to the United States and returned to Israel. Again, not showing that she fears this type of future persecution. You know, the argument about the evidence that could have been presented would have been, if you would, had presented, but isn't, didn't the I.J. find this person to be incredible, but the BIA did not make a specific finding on that particular issue, and therefore, we would treat her testimony as credible. Is that correct? No, that's what occurred in the other case. In this case, the judge found her credible and the board, and evaluated the evidence as presented, applying, just like this Court, that these were just tasteful discriminatory acts, the board echoed that sentiment as well. Okay. And if she's found credible, I guess the cumulative evidence as to what she testified to wouldn't make any difference if it were truly credible. If it were in addition to what she had already testified to, and if she were a credible witness, then that evidence would stand, and you're saying additional. Somebody else saying the same thing wouldn't have made any difference. It wouldn't have made any difference. And actually, it's less important. What is important in asylum is what happens to the individual and how the individual will be affected. When she describes a discrimination, then she brings an expert to say, yes, in fact, this occurred. Well, that bolsters the fact that she did endure harassment, but does not change or does not morph harassment into persecution. And that is what they're attempting to do with this ineffective assistance claim, bite off this future persecution, this pattern and practice of pervasive persecution in Israel, which is not supported by the record. I want to change to a slightly different subject. Judge Toshima mentioned the issue of voluntary departure. In the Nodko Chief case, whatever one may say about incorporation by the BIA, isn't it correct that the BIA ultimately granted her voluntary departure? Yes. So it's really a moot point in this case, is it not? It would be. She was granted. She was granted voluntary departure by the immigration judge, apparently did not post the bond within the board, granted her voluntary departure as well. And there is a — in this case, we have the attorney saying that, no, I would never give such bad advice. The immigration judge saying, you know, you need to pay this. I don't think you can. Why don't you take a break and talk to her and see if they can pay in coming back and saying yes. And so we do have — the board had evidence on its side, and it's not an abusive discretion to deny their ineffective assistance claim. Mr. Hornick, if you'd like to use the balance of your time. Your Honor, I just want to add that, in response to counsel's argument, that we do not need to establish a fear of persecution throughout the entire country of Israel, which is albeit a small one in any event. So I'd ask the Court to take that into account, and that we do not need to show only that our client fears government persecution, that the actors of private — actions of private individuals can also form a basis for such a claim. They can, certainly, but in order to establish persecution, they still have to show a reasonable fear that the government will be involved or will condone persecution. Isn't that correct? I believe that if we establish under Koroblina, a case from 1998 from this Court, that — mentioned in our brief — that the government's inability to prevent persecution is also a factor that can substantiate a claim. I have nothing further unless the Court has other questions. Thank you, gentlemen, for your argument. The case just heard will be submitted. And we will next hear argument in the case of Shielding International versus Oak Harbor Freight Lines. Mr. Davidson, I believe you are —
judges: Thompson, Tashima, M. Smith